UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| SUSAN R. CADY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-57 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  On September 15, 2010, plaintiff protectively filed her applications for DIB and SSI benefits.  She alleged a September 1, 2010, onset of disability.[1]  (Page ID 158-68).  Her disability insured status expired on December 31, 2011.  Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before December 31, 2011.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims for DIB and SSI benefits were denied on initial review.  (Page ID 88-97, 99-108).  On July 27, 2012, she received a hearing before an administrative law judge (ALJ), at

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, October 2010 is plaintiff's earliest possible entitlement to SSI benefits.

which she was represented by counsel.  (Page ID 49-85).  On September 7, 2012, the ALJ issued his decision finding that plaintiff was not disabled.  (Page ID 34-44).  On November 19, 2013, the Appeals Council denied review (Page ID 22-24), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits.  She asks the court to overturn the Commissioner's decision on the following grounds:  the ALJ erred as a matter of law in failing to assign controlling weight to the opinions of a treating physician, Dr. Yousif Hamati, M.D., and alternatively assigning great weight to a non-examining physician, Eric VanderHaagen, D.O.  (Plf. Brief at 1-2, docket # 12, Page ID 391-92).  The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence

-2-

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from September 1, 2010, through the December 31, 2011, but not thereafter. (Op. at 3, Page ID 36). Plaintiff had not engaged in substantial gainful activity on or after September 1, 2010. (*Id.*). Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, arthritis of the cervical spine, peripheral neuropathy of the feet, history of sinusitis and bronchitis, obesity and depression." (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 37). The

ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:  lifting 20 pounds occasionally and 10 pounds frequently; standing and walking 6 hours and sitting 6 hours in an eight-hour workday, with the option to sit or stand; frequent climbing of ramps and stairs; never climbing ladders, ropes and scaffolds; frequent balancing; occasional stooping, kneeling, crouching and crawling; and she is limited to unskilled work with only occasional contact with the public.

(Op. at 5-6, Page ID 38-39).  The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible.  (*Id.* at 6-10, Page ID 39-43).  The ALJ found that plaintiff was not able to perform any past relevant work.  (*Id.* at 10, Page ID 43).  Plaintiff was 51-years-old as of her alleged onset of disability, 52-years old on the date her disability insured status expired, and 53-years-old as of the date of the ALJ's decision.  Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as an individual closely approaching advanced age.  (*Id.*).  Plaintiff has at least a high-school education and is able to communicate in English. (*Id.*).  The transferability of job skills was not material to a disability determination.  (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 8,000 jobs in Michigan that the hypothetical person would be capable of performing.  (Op. at 10-11, Page ID 43-44; *see also* Page ID 81-82).  The ALJ found that this constituted a significant number of jobs.  Using Rule 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op. at 10-11, Page ID 43-44).

Plaintiff argues that the ALJ committed reversible error by his failure to give controlling weight to the opinions of Yousif Hamati, M.D., a treating physician, and alternatively assigning too much weight to the opinions of a non-examining physician, Eric VanderHaagen, D.O. (Plf. Brief at 1-2, 4-6, Page ID 391-92, 394-97).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). The opinion of a treating source is given "controlling weight" if two conditions are satisfied: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion

---

[2] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) ("[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 461.927(c); *Martin v. Commissioner*, 170 F. App'x  369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-

38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Most of the evidence that plaintiff presented in support of her claims for DIB and SSI benefits was generated outside the time periods at issue.[3] The relevant time period on plaintiff's claim for DIB benefits ran from her alleged onset of disability, September 1, 2010, through her date last disability insured, December 31, 2011. The relevant time period for her claim for SSI benefits ran from the protective filing date, September 15, 2010, through the date of the ALJ's decision, September 7, 2012. Plaintiff did not see Dr. Hamati at any time during the period at issue on her claim for DIB benefits and she only saw him once during the period at issue on her claim for SSI benefits.[4]

On November 30, 2010, Donald Sheill, M.D., conducted a consultative examination. (Page ID 329-33). Plaintiff reported that she had been laid off from work in September 2007. (Page ID

---

[3] Such evidence is "minimally probative" and is considered only to the extent that it illuminates the plaintiff's condition during the periods at issue. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ noted that plaintiff's "orthopedist, Yousif Hamati, M.D. saw her in July 2009 and noted that she was neurologically intact, and he prescribed only non-narcotic medications (Exhibit 2F at 1). Thereafter, claimant was not seen by Dr. Hamati again until 2012." (Op. at 7, Page ID 40).

[4] Given the lack of evidence of an ongoing treatment relationship during the periods at issue, the ALJ could have treated Dr. Hamati's opinions as a consultative examiner rather than a treating physician without committing reversible error. It is well established that a single visit does not suffice to establish a treating physician relationship. *Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

331).  She was 5' 3" tall and weighed 203 pounds.  (Page ID 331).  Plaintiff's hands were free of

atrophy, swelling, or deformity and her fine and gross dexterity was intact.  Her straight leg raising

tests were negative.  Her spine was straight without deformity or focal tenderness.  Plaintiff's sensory

and motor functions in her lower extremities were full.  She did have a "marked reduction in sensory

of the feet," but her tandem gait was normal.  She had no peripheral edema.  (Page ID 332).  X-rays

taken of plaintiff's lumbosacral spine on November 30, 2010, indicated mild to moderately advanced

discogenic degenerative changes.  (Page ID 326).  Dr. Sheill noted:  "Throughout the visit until the

end when her depression and anxiety were discussed, she was alert, appropriate, and maintained

good eye contact.  There were no sad or anxious behaviors until the end.  Then she was tearful when

relaying her history."  (Page ID 332).

On August 8, 2011, plaintiff was examined by DAndrea Heeres, M.D., her primary care

physician.  (Page ID 66, 352-55).  Plaintiff related a history of back pain.  She stated that a year

earlier she had been "doing fine on Celebrex alone," but her back pain had become much worse.

(Page ID 353).  Plaintiff reported a recent increase in stress stemming from her father's arrest in June

and his ongoing confinement in jail.  (Page ID 353).  Dr. Heeres found that plaintiff was alert and

oriented, appeared to have grossly normal intellect, and her memory was intact.  Plaintiff was obese,

but was not in any acute distress.  Her deep tendon reflexes were "preserved and symmetric."  (Page

ID 355).

On August 17, 2011, x-rays were taken of plaintiff's lumbar spine.  These x-rays indicated

a "slight progression" in degenerative changes.  (Page ID 369).  The CT scan of plaintiff's head on

August 17, 2011, returned normal results.  (Page ID 367).  On September 7, 2011, the MRI of

plaintiff's lumbar spine was interpreted as showing multilevel disc degeneration and spondylosis

with no significant degrees of spinal stenosis.  There was mild narrowing of the neural foramina. Moderate bilateral facet arthrosis was noted at L4-5.  The spinal canal was patent at all levels with no focal disc protrusion and  no vertebral compressions.  (Page ID 368).

October 12, 2011, plaintiff returned to Dr. Heeres.  (Page ID 344-49).  Plaintiff complained of hypertension, hyperlipidemia, back pain and diarrhea.  (Page ID 345).  Plaintiff was not in any acute distress.  Her extremities displayed no clubbing, cyanosis or edema.  She was alert and oriented.  Dr. Heeres found no unusual anxiety or evidence of depression.  (Page ID 349).

On May 8, 2012, plaintiff appeared at Dr. Hamati's office.  He noted that plaintiff had "not been seen for over two years."  (Page ID 370).  Hamati was aware that plaintiff was applying for social security benefits.  He offered his opinion that plaintiff was "completely disabled" and "could not do any kind of gainful employment."  (*Id.*).

On May 13, 2012, the MRI of plaintiff's cervical spine showed that vertebral heights and alignment were unremarkable.  There was evidence of degenerative dehydration of all interspaces, most significantly at the C4-5 and C5-6 levels.  John Kaurich, M.D., offered a diagnosis of "[m]ultilevel spondylosis with varying degrees of mild to significant foraminal stenosis."  (Page ID 371-72).

On July 24, 2012, plaintiff's attorney elicited statement from Dr. Hamati.  (Page ID 375-85). Dr. Hamati offered his opinion that plaintiff would miss more than three days of work per month, would need to take unscheduled work breaks, and would need to lie down for extended periods. Hamati stated that he would limit plaintiff to lifting no more than 10 pounds, avoid completely any repetitive work, and restrict her from twisting, stooping, crouching and climbing.  He gave an opinion that plaintiff was not capable of performing sedentary work.  (Page ID 381-84).

The ALJ found that the extreme restrictions that Dr. Hamati suggested were entitled to little weight:

> First, the records indicate Dr. Hamati has seen the claimant only three times: once in 2007 more than three years prior to the alleged onset date, once in July 2009, which was more than a year prior to her alleged onset date[,] and once in May 2012 just a few months before the hearing. Thus, Dr. Hamati does not have a longitudinal treating history with the claimant. Moreover, Dr. Hamati's records are devoid of any significant positive clinical findings, he does not objectively document that she appears in pain, and he has not prescribed her with more than conservative medications. Moreover, his opinion is inconsistent with the remainder of the record that documents claimant sought treatment on a number of occasions without mentioning her back or neck pain, her activities of daily living, and her lack of treatment.

(Op. at 9, Page ID 42). None of the opinions expressed by Dr. Hamati regarding plaintiff's disability or RFC were entitled to controlling weight. The issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Allen v. Commissioner*, 561 F.3d at 652. If a treating physician "submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors – his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)). Dr. Hamati's predictions of how often plaintiff would likely miss work was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-v-97, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Here, the ALJ gave a more than adequate explanation of his consideration of Dr. Hamati's  statements and gave good reasons why he found that the opinions expressed therein were entitled to little weight.

-10-

Plaintiff's alternative argument, that the ALJ gave too much weight to the opinion of Dr. Eric VanderHaagen, does not provide a basis for disturbing the Commissioner's decision. Plaintiff argues that it was error to give great weight to Dr. VanderHaagen's opinion because the record before the medical consultant on December 16, 2010,[5] did not include subsequent "diagnostic studies [that] were performed in 2011 and 2012." (Plf. Brief at 6, Page ID 396). This is not sufficient to establish error. Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that Dr. VanderHaagen gave his opinion on the basis of the medical record as it existed in December 2010. (Op. at 8, Page ID 41). The ALJ is responsible for weighing conflicting evidence. *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ was free to consider Dr. VanderHaagen's opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.' " *Cobb v. Commissioner*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v.*

---

[5]The record does not support plaintiff's assertion that "[t]he evaluation was performed in October, 2010." (Plf. Brief at 6, Page ID 396). Dr. VanderHaagen clearly had the results of the consultative medical examination conducted on November 30, 2010, and the x-rays taken on that date. (*see* Page ID 91). Dr. VanderHaagen gave his opinion on December 16, 2010. (Page ID 95, 97).

*Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.").  The ALJ found that Dr. VanderHaagen's opinion that plaintiff was capable of performing a limited range of light work was persuasive because it was consistent with the record as a whole, including plaintiff's history of seeking very limited treatment, plaintiff's daily activities, and plaintiff's inconsistent reports regarding back pain to Dr. Heeres, her primary care physician.  (Op. at 8-9, Page ID 41-42).  The Court finds no error.

## Conclusion

For the reasons set forth herein,  the Commissioner's decision will be affirmed.


Dated: June 17, 2015                              /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE